## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNECTICUT CITIZENS DEFENSE LEAGUE, INC., AMY JONES, TODD SKILTON, JOHN LOWMAN, JOSEPH COLL, TANYSHA BROWN, AND DANIEL GERVAIS | Case No. _____ |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| NED LAMONT,  JAMES ROVELLA, PAUL MELANSON, ANDREW COTA, BRIAN GOULD and JAMES KENNY | MAY 9, 2020 |
| Defendants. | |

Plaintiffs CONNECTICUT CITIZENS DEFENSE LEAGUE, INC. ("CCDL"), AMY JONES, TODD SKILTON, JOHN LOWMAN, JOSEPH COLL, TANYSHA BROWN and DANIEL GERVAIS (together, "Plaintiffs"), by and through the undersigned counsel of record, bring this complaint for injunctive and declaratory relief against the named Defendants, and allege as follows:

## I. INTRODUCTION

1.    Plaintiffs JOSEPH COLL, AMY JONES, TODD SKILTON, JOHN LOWMAN, JOSEPH COLL, TANYSHA BROWN and DANIEL GERVAIS are law-abiding members of their community and members of Plaintiff CCDL. They and similarly situated individuals who are not prohibited from acquiring or possessing firearms

1

under state and federal law, have a fundamental, constitutionally guaranteed right to purchase firearms, ammunition, and/or ammunition magazines ("magazines"). But because of Defendants' actions in enacting, interpreting and enforcing certain laws and orders, the Plaintiffs have been illegally prevented from exercising these rights. By their Complaint, the Plaintiffs allege that the conduct of the Defendants, undertaken under color of law, illegally deprives the Plaintiffs of their Constitutional right to keep and bear arms, right to due process of law, right to equal protection under the law, and right to the privileges and immunities of citizenship. The Plaintiffs bring this action seeking a declaratory judgment that the Defendants' actions are unconstitutional, and seek injunctive relief and a writ of mandamus requiring the Defendants to either allow the Plaintiffs to apply for firearms certificates and permits, or to allow the Plaintiffs to obtain and possess firearms, ammunition and magazines without a certificate or permit.

## II. JURISDICTION & VENUE

2.  This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation under color of the law, of the rights, privileges or immunities secured by the United States Constitution. To the extent Plaintiffs' claims may allege or may be construed to allege state law claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

3.  Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' causes of action arose or exist in this District in which the action is brought.

### III. PARTIES

4.  Plaintiff CCDL is a nonprofit, educational foundation, incorporated under the laws of Connecticut with its principal place of business in Torrington, Connecticut. Its mission is to preserve the effectiveness of the Second Amendment through legislative and grassroots advocacy, education, research, publishing, legal action and programs focused on the Constitutional right to keep and bear arms.  CCDL has over 34,000 members and supporters nationwide, with more than 95 percent of its members and supporters being residents of Connecticut. CCDL represents its members and supporters - which include individuals seeking to exercise their right to purchase, keep and carry firearms, ammunition and magazines for self-defense. CCDL brings this action on behalf of itself and its members and supporters who possess all the indicia of membership, and similarly situated members of the public. CCDL has expended and diverted resources, and is adversely and directly harmed, because of Defendants' conduct as challenged herein.

5.  Plaintiff Amy Jones ("Jones") is a natural person, a resident of Farmington, Connecticut, an adult over the age of 21, a citizen of the United States, and is legally eligible under federal and state law to acquire and possess firearms, ammunition, and magazines. Plaintiff Jones is a member and supporter of Plaintiff CCDL.

6.  Plaintiff Todd Skilton ("Skilton") who is married to Plaintiff Jones, is a natural person, a resident of Farmington, Connecticut, an adult over the age of 21, a citizen of the United States, and is legally eligible under federal and state law to acquire and

possess firearms, ammunition, and magazines. Plaintiff Skilton is a member and supporter of Plaintiff CCDL.

7.   Plaintiff John Lowman ("Lowman") is a natural person, a resident of Ansonia, Connecticut, an adult over the age of 21, a citizen of the United States, and is legally eligible under federal and state law to acquire and possess firearms, ammunition, and magazines. Plaintiff Lowman is a member and supporter of Plaintiff CCDL.

8.   Plaintiff Joseph Coll ("Coll") is a natural person, a resident of Vernon, Connecticut, an adult over the age of 21, a citizen of the United States, and is legally eligible under federal and state law to acquire and possess firearms, ammunition, and magazines. Plaintiff Coll is a member and supporter of Plaintiff CCDL.

9.   Plaintiff Tanysha Brown ("Brown") is a natural person, a resident of Bristol, Connecticut, an adult over the age of 21, a citizen of the United States, and is legally eligible under federal and state law to acquire and possess firearms, ammunition, and magazines. Plaintiff Brown is a member and supporter of Plaintiff CCDL.

10.   Plaintiff Daniel Gervais ("Gervais") is a natural person, a resident of Farmington, Connecticut, an adult over the age of 21, a citizen of the United States, and is legally eligible under federal and state law to acquire and possess firearms, ammunition, and magazines. Plaintiff Gervais is a member and supporter of Plaintiff CCDL.

11.   Defendant Ned Lamont is the elected Governor of the State of Connecticut. In such capacity, Defendant Lamont is the State's supreme executive officer. Connecticut Constitution, Art. 4, § 5. As Governor, he is charged with the duty to "take care that the laws be faithfully executed" and he is "the conservator of the peace throughout

4

the state." Id. Art. 4, § 12. Defendant Lamont is therefore ultimately responsible for the oversight, direction, and implementation of the enforcement of the laws and orders at issue in this action, including by and through his delegation of such enforcement authority to Defendant James C. Rovella. Defendant Lamont is sued in his official capacity.

12.  Defendant Commissioner James C. Rovella is the Chief Executive of the Connecticut Department of Emergency Services and Public Protection ("DESPP").  On information and belief, Commissioner Rovella, through a delegation of power and authority from Defendant Lamont, who appointed him, is charged with overseeing, directing, implementing, and otherwise executing through DESPP, the State's laws and orders at issue in this lawsuit, including but not limited to Connecticut General Statutes (CGS) §§ 29-17a, 29-17c, 29-28, 29-28a, 29-29, 29-30, 29-33, 29-35, 29-37q, 29-37r, 29-37s, 29-38m, 29-38-n, 29-38o and Executive Order 7E. Commissioner Rovella is sued in his official capacity.

13.  Defendant Paul Melanson is the Chief of Police for the Town of Farmington, a municipality located in the State of Connecticut. Upon information and belief, Chief Melanson oversees, directs, implements, and is ultimately responsible for the acceptance of applications for, the processing of, and the issuance of, temporary pistol permits to residents of the Town of Farmington. Chief Melanson is sued in his official capacity.

14.  Defendant Andrew Cota is the Chief of Police for the City of Ansonia, a municipality located in the State of Connecticut. Upon information and belief, Chief Cota

oversees, directs, implements, and is ultimately responsible for the acceptance of applications for, the processing of, and the issuance of, temporary pistol permits to residents of the City of Ansonia. Chief Cota is sued in his official capacity.

15. Defendant Brian Gould is the Chief of Police for the City of Bristol, a municipality located in the State of Connecticut. Upon information and belief, Chief Gould oversees, directs, implements, and is ultimately responsible for the acceptance of applications for, the processing of, and the issuance of, temporary pistol permits to residents of the City of Bristol. Chief Gould is sued in his official capacity.

16. Defendant James L. Kenny is the Chief of Police for the Town of Vernon, a municipality located in the State of Connecticut. Upon information and belief, Chief Kenny oversees, directs, implements, and is ultimately responsible for the acceptance of applications for, the processing of, and the issuance of, temporary pistol permits to residents of the Town of Vernon. Chief Kenny is sued in his official capacity.

## IV.   FACTS APPLICABLE TO ALL COUNTS

17. In Connecticut, barring a statutory exemption, none of which apply here, the transfer of ownership of ammunition and/or magazines is restricted to those persons possessing a State-issued ammunition certificate, long gun eligibility certificate, handgun eligibility certificate, or permit to carry pistols and revolvers ("pistol permit"). CGS § 29-38m. Transfer of ammunition or magazines to a non-exempted person who does not possess such a certificate or permit is a Class D felony. CGS § 29-38m(e).

18.     In Connecticut, barring a statutory exemption, none of which apply here, the transfer

        of ownership of rifles and/or shotguns is restricted to only those persons possessing

        a State-issued long gun eligibility certificate, handgun eligibility certificate, or pistol

        permit. CGS § 29-37a. Transfer of a rifle or shotgun to a non-exempted person who

        does not possess such a certificate or permit is a Class D felony. CGS § 29-37a(j).

19.     In Connecticut, barring a statutory exemption, none of which apply here, the transfer

        of ownership of pistols and revolvers is restricted to only those persons possessing a

        State-issued handgun eligibility certificate, or pistol permit. CGS § 29-33. Transfer of

        a pistol or revolver to a non-exempted person who does not possess such a certificate

        or permit is a Class C felony. CGS § 29-33(i).

20.     In Connecticut, barring a statutory exemption, none of which apply here, the conduct

        of carrying a loaded handgun on the person in public - outside the limited boundaries

        of a person's home, or their place of business – by any person who does not possess

        a pistol permit is prohibited. CGS § 29-35. The same applies to the transportation of

        a loaded handgun. Id. CGS 29-38. Both are felonious.

21.     Persons convicted of a felony not only face serious criminal penalties, but such

        conviction would also disqualify them from obtaining a State-issued firearms

        certificate or permit and from lawfully possessing a firearm, ammunition or magazine.

22.     On information and belief, the State and law enforcement officers within it (some

        under the ultimate direction of Defendants Rovella, Melanson, Cota, Gould and

        Kenny) and prosecutors within it, routinely enforce CGS §§ 29-38m(e), 29-37a(j),

        and/or 29-33(i), against individuals without a State-issued certificate or permit who

                                            7

are otherwise legally eligible to acquire and/or possess firearms, ammunition, and/or magazines.

23.    On information and belief, the State and law enforcement officers within it (some under the ultimate direction of Defendants Rovella, Melanson, Cota, Gould and Kenny) and prosecutors within it, routinely enforce § CGS 29-35, and/or CGS § 29-38, against individuals without a State-issued pistol permit who are otherwise legally eligible to carry pistols and revolvers.

24.    In Connecticut, all State-issued firearms certificates and permits are issued by DESPP. CGS §§ 29-38n, 29-37p, 29-36f, and 29-28.  In order to obtain a State-issued firearms certificate or permit, an applicant for such certificate or permit is required to present him/herself for the taking of his/her fingerprints by law enforcement so that law enforcement can perform a criminal background check on the person. CGS § 29-17a.

25.    In Connecticut, as a condition precedent to the issuance of a State-issued pistol permit, the applicant must first obtain a temporary pistol permit from the town or city in which said applicant resides ("local issuing authority"). CGS § 29-28(b).

26.    In Connecticut, a person seeking to obtain a temporary pistol permit must submit his/her application to their local issuing authority. CGS § 29-28(a). As a part of the application process, the applicant is required to submit (as with other state firearms certificates and permits) him/herself in person for the purposes of having his/her finger prints taken for the CGS § 29-17a criminal background check. CGS § 29-29.

27.     In Connecticut, pursuant to CGS § 29-17c, state and local law enforcement is
        prohibited from refusing to take the fingerprints of an applicant for a firearms
        certificate or permit.

28.     On March 10, 2020, in response to the outbreak of the Coronavirus (aka COVID-
        19), Defendant Lamont declared Public Health and Civil Preparedness Emergencies
        pursuant to CGS §§ 19a-131a and 28-9.

29.     On March 16, 2020, Plaintiff Coll appeared at the Vernon Police Department to
        submit his application for a State-issued pistol permit, at which time Plaintiff Coll was
        informed that the Vernon Police Department had suspended the taking of
        fingerprints for pistol permits. In violation of CGS 29-17a, the Vernon Police
        Department refused to take Plaintiff Coll's fingerprints, and refused to accept
        Plaintiff Coll's application for a pistol permit.

30.     On March 16, 2020 and thereafter, Plaintiff Coll was, and has been, employed as a
        school teacher in Connecticut. During the application process to be employed as a
        school teacher, Plaintiff Coll was fingerprinted for the purposes of a criminal
        background check. Pursuant to C.G.S. § 29-29(b), Plaintiff Coll is not required to re-
        submit fingerprints for the processing of his pistol permit application. Nonetheless,
        the Vernon Police Department refused to accept his application for a pistol permit.

31.     On March 17, 2020, ostensibly relying upon the statutory powers granted to him by
        his own declaration of Public Health and Civil Preparedness Emergencies, Defendant
        Lamont issued Executive Order 7E which, among other things, suspended C.G.S. 29-
        17c(a), permitting DESPP and municipal police departments to "eliminate or limit

fingerprint hours" for firearms certificates and permits, but maintained that fingerprinting for long term care providers would continue to take place at DESPP headquarters. Additionally, that DESPP headquarters "would remain open to the general public for other purposes."

32. Upon information and belief, following the issuance of Defendant Lamont's Executive Order 7E, DESPP and local issuing authorities throughout the State stopped taking fingerprints from firearms certificate and permit applicants.

33. On April 13, 2020, Plaintiff Lowman having completed his statutorily required firearms training and wanting to apply for a pistol permit, contacted the Ansonia Police Department for the purposes of having his fingerprints taken to submit with his application.

34. On April 13, 2020, Plaintiff Lowman was informed by the a representative of Ansonia Police Department that, pursuant to Governor Lamont's Executive Order 7E, it was not taking fingerprints from firearms certificate or permit applicants, and therefore would not accept Plaintiff Lowman's application for a pistol permit.

35. On or about April 15, 2020, Plaintiff Brown, having completed her statutorily required firearms training and wanting to apply for a pistol permit, contacted the Bristol Police Department for the purposes of having her fingerprints taken to submit with her application.

36. On or about April 15, 2020, when Plaintiff Brown contacted the Bristol Police Department for the purposes of arranging for the taking of her fingerprints, she was informed that, due to the issuance of Governor Lamont's Executive Order 7E, the

Bristol Police Department had suspending the taking of fingerprints for that purpose, and therefore would not accept Plaintiff Brown's application for a pistol permit.

37. Plaintiff Brown had previously been employed as security guard for a bank. During the application process to be employed as a security guard, Plaintiff Brown was fingerprinted for the purposes of a criminal background check. Pursuant to C.G.S. § 29-29(b) Plaintiff Brown is not required to re-submit fingerprints for her pistol permit application. Nonetheless, the Bristol Police Department refused to accept her application.

38. On April 20, 2020, Plaintiffs Jones and Skilton had completed their statutorily required firearms training, and wanted to apply for respective pistol permit(s).

39. On April 20, 2020, Plaintiff Jones contacted the Farmington Police Department on behalf of herself and Plaintiff Skilton, for the purposes of arranging to have their fingerprints taken to submit their respective application(s) for a pistol permit.

40. On April 20, 2020, a representative of the Farmington Police Department informed Plaintiff Jones that it had suspended the taking of fingerprints for the purposes of submission of pistol permit applications, and therefore she and Plaintiff Skilton could not submit their respective application(s).

41. The failure and/or refusal of local and state law enforcement to take fingerprints of applicants like Plaintiffs Jones, Skilton, Lowman, Coll, Brown, and similarly situated CCDL members, has effectively stopped the only process by which individuals without a State-issued firearms certificate or permit can obtain a certificate or permit

required to legally obtain, possess and/or carry (as applicable) firearms, ammunition, and/or magazines in the State.

42.     The failure and/or refusal of the Bristol and Vernon Police Department(s) to honor and recognize the fact that Plaintiff Brown, Plaintiff Coll and similarly situated CCDL members, do not need to re-submit their fingerprints, and still not accept the applications of Plaintiff Brown and Plaintiff Coll has effectively stopped the only process by which those individuals without a State-issued firearms certificate or permit can obtain a certificate or permit required to legally obtain, possess and/or carry (as applicable) firearms, ammunition, and/or magazines in the State.

43.     Prior to April 20, 2020, Plaintiff Gervais had completed his statutorily required firearms training, paid the required fees, had his fingerprints taken, and submitted his application for a pistol permit to the Resident State Trooper for Jewett City – his local law enforcement charged with accepting applications for pistol permits.

44.     On April 22, 2020, the Resident State Trooper for Jewett City having reviewed the information submitted, issued Plaintiff Gervais a temporary pistol permit.

45.     On or about April 22, 2020, Plaintiff Gervais inquired of the state police as to completing the process for obtaining his State-issued pistol permit, which is, on all occasions, effectuated by the state police.  However, on said date, a representative of the state police informed him that it was not processing pistol permit applications and not issuing new pistol permits (even though fingerprinting is not required for this issuance).

46. The failure and/or refusal of state law enforcement to issue a State-issued pistol permit to Plaintiff Gervais has effectively stopped the only process by which, without a State-issued firearms certificate or permit, he can obtain a certificate or permit required to legally obtain and/or carry (as applicable) firearms, ammunition, and/or magazines throughout the State.

47. Although the Defendants have closed off all avenues for the Plaintiffs to obtain a State-issued firearms certificate or permit, many categories of individuals statutorily exempt from the State's criminal laws can freely carry loaded, operable handguns in public without having their fingerprints taken, submitting any application, asking for permission to exercise their rights, passing a background check, or paying any fees at all, because of their status or former status as government favored categories of individuals.

48. The Legislature has provided no findings or declarations to support any legitimate government interest for creating such special exemptions while denying other responsible and law-abiding citizens, like Plaintiffs Jones, Skilton, Lowman, Coll, Brown, Gervais and similarly situated CCDL members, the ability to lawfully exercise their constitutional right to obtain and possess firearms, ammunition, and magazines.

49. Upon information and belief, although the Defendants Lamont, Rovella, Melanson, Cota, Gould, and Kenny have closed off all avenues for Plaintiffs Jones, Skilton, Lowman, Coll, and Brown to have their fingerprints taken to obtain a State-issued firearms certificate or permit, DESPP and the Farmington, Ansonia, Bristol, and Vernon Police Departments are continuing to take fingerprints of applicants for

potential employment, of arrestees, and/or of other individuals for purposes unrelated to issuing firearms permits.

50. The Legislature has provided no findings or declarations to support any legitimate government interest for taking the fingerprints of applicants for state employment, other permits, and for administrative purposes while refusing to take the fingerprints of other law-abiding, responsible citizens, like Plaintiffs Jones, Skilton, Lowman, Coll, and Brown, and those similarly situated CCDL members seeking to obtain a State-issued firearms certificate or permit.

51. At least twelve other states allow persons with Connecticut State-issued pistol permits to also carry handguns in those states (hereafter, the "reciprocal states"). In fact, Texas's recognition of Connecticut pistol permits is expressly based upon affirmation by Connecticut's Attorney General that Connecticut checks the background of its applicants for such permits prior to the issuance of the same. Upon information and belief, Montana maintains this same requirement for recognition of a Connecticut permit.

52. Without a State-issued pistol permit, Connecticut citizens like the Plaintiffs are not afforded the right to carry handguns in reciprocal states.

53. In addition to the twelve reciprocal states, almost all of the thirty six remaining states which issue pistol permits, allow Connecticut citizens to apply in their state for a "non-resident pistol permit" if they hold a State-issued Connecticut pistol permit.

54. Without a State-issued pistol permit, Connecticut citizens like the Plaintiffs are not afforded the right to apply for a non-resident pistol permit in those remaining states

and therefore Connecticut citizens are prevented from even being able to apply to lawfully carry firearms in those states.

55. The State's laws regarding the purchase, possession and carrying of firearms, ammunition, and/or magazines, including Executive Order 7E, and enforcement thereof, as applied by the Defendants against the Plaintiffs, infringe on the Plaintiffs' fundamental, individual right to keep and bear arms, guaranteed under the Second and Fourteenth Amendments.

56. The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." The Fourteenth Amendment to the United States Constitution provides in relevant part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

57. The Second Amendment is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. McDonald v. City of Chicago, 561 U.S. 742, 750 (2010); Id. at 805 (Thomas, J., concurring). The "right to keep and bear arms is a privilege of American citizenship that applies to the States through the Fourteenth Amendment's Privileges or Immunities Clause." Id. at 806 (Thomas, J., concurring).

58.   Article the First, Section 15 of the Connecticut Constitution provides: "Every citizen has a right to bear arms in defense of himself and the state."

59.   "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." District of Columbia v. Heller, 554 U.S. 570, 634 (2008).

60.   "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." Id. at 634-35.

61.   The "central" - but not the only - holding of the Supreme Court in Heller was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." McDonald v. City of Chicago, 561 U.S. at 780. The Second Amendment also "guarantee[s] the individual right to possess and carry weapons in case of confrontation." Heller, 554 U.S. at 592.

62.   This is particularly true when it comes to handguns, as the Heller Court has explicitly recognized the handgun as "the quintessential self-defense weapon" in the United States, and that a complete prohibition on their carry and use is necessarily invalid. Id. at 629.

63.   Plaintiff CCDL's members, including the Plaintiffs herein, and others similarly situated, desire to, and must be allowed to, purchase and possess firearms, ammunition, and magazines for lawful purposes, and they would but for the reasonable fear and imminent risk of arrest and criminal prosecution under the State's

laws imposing criminal sanctions on the transfer of firearms, ammunition, and/or magazines to persons who have not been issued a State-issued firearms certificate or permit.

64. The actions and orders of the Defendants, who are and have been at all relevant times acting under color of state law, are therefore denying the Plaintiffs and all similarly situated members of CCDL and others any ability to exercise their right to keep and bear arms by acquiring and possessing firearms ammunition, and/or magazines.

65. The actions and orders of the Defendants are denying the Plaintiffs and all similarly situated CCDL members and others any ability to lawfully acquire and possess the quintessential self-defense weapon for the quintessential purpose of lawfully protecting themselves when the effects of the contagion are bringing heightened public dangers.

66. Specifically, the Defendants have completely cut off the only available channel for the Plaintiffs to lawfully exercise this right, leaving the Plaintiffs subject to sanctions under the State's criminal statutory scheme.

## <u>COUNT 1 – DEPRIVATION OF CIVIL RIGHTS</u><br><u>VIOLATIONS OF THE RIGHT TO KEEP AND BEAR ARMS</u><br><u>42 U.S.C. § 1983</u>

67. Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

68. There is an actual and present controversy between the parties.

69.    The Second and Fourteenth Amendments to the United States Constitution and Article the First, Section 15 of the Connecticut Constitution, guarantee adult citizens the fundamental right to keep and bear arms.

70.    The right to keep and bear arms includes, but is not limited to, the right of individuals to acquire firearms, ammunition, and magazines.

71.    42 U.S.C. § 1983 prohibits state actors from depriving a person of constitutional rights under color of state law.

72.    As applied to the Plaintiffs and all similarly situated CCDL members, the action of Defendants Rovella, Melanson, Cota, Gould and Kenny in refusing to allow the taking of fingerprints for the purpose of issuing firearms certificates and permits is unconstitutional and violates the Plaintiffs' right to keep and bear arms.

73.    As applied to the Plaintiffs and all similarly situated CCDL members, the portion of Defendant Lamont's Executive Order 7E which suspended the taking of fingerprints by DESPP and afforded Defendants Rovella, Melanson, Cota, Gould and Kenny the opportunity to halt the taking of fingerprints for the purposes of issuing firearms certificates and permits, is unconstitutional and violates the Plaintiffs' right to keep and bear arms.

74.    By effectively and completely preventing the Plaintiffs and similarly situated members of the CCDL from acquiring and possessing firearms, ammunition, and/or magazines, under the various statutes governing such conduct, the enforcement policies of Defendants Lamont, Rovella, Melanson, Cota, Gould and Kenny violate

the Plaintiffs' fundamental, individual right to keep and bear arms and thus have violated and continue to violate 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

75.   By and through the orders of Defendants Rovella, Melanson, Cota, Gould and Kenny to their respective departments to not take the fingerprints from firearms permit applicants like the Plaintiffs and similarly situated members of the CCDL, in accordance with the statutes, Defendants Rovella, Melanson, Cota, Gould and Kenny have violated and are continuing to violate 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

76.   The Plaintiffs have been damaged and continue to be damaged by the Defendants' conduct.

77.   The Plaintiffs have no adequate remedy at law as no damages could compensate the Plaintiffs for the deprivation of their Constitutional rights.

78.   Without an order for temporary injunctive relief pending a hearing on the Plaintiffs' claims for permanent injunctive relief, the Plaintiffs will suffer ongoing irreparable harm.

## COUNT 2 – DEPRIVATION OF CIVIL RIGHTS VIOLATIONS OF THE RIGHT TO DUE PROCESS 42 U.S.C. § 1983

79.   Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

80.   State statutes prohibit the Plaintiffs from exercising their constitutional right to keep and bear arms without a State-issued certificate or permit.

81.  State statutes prohibit the Plaintiffs from obtaining a State-issued certificate or permit without law enforcement taking the Plaintiffs' fingerprints.

82.  The Defendants' orders, including, but not limited to Executive Order 7E, prevent law enforcement from taking the Plaintiff's fingerprints, leaving the Plaintiffs no process to have their fingerprints taken.

83.  The Defendants' orders, including, but not limited to Executive Order 7E, prevent the Plaintiffs from applying for a State-issued certificate or permit, leaving the Plaintiffs no lawful process to obtain or possess firearms, ammunition, and/or magazines.

84.  The Defendants' orders, including, but not limited to Executive Order 7E, prevent the Plaintiffs from obtaining a State-issued pistol permit.

85.  If State statutes require the Plaintiffs to obtain a State-issued certificate or permit to exercise their constitutional rights, the State must provide a lawful process for the Plaintiffs to obtain a State-issued certificate or permit.

86.  Due to the conduct of the Defendants, the Plaintiffs have no lawful process through which to obtain a State-issued certificate or permit to exercise their constitutional right.

87.  If the Defendants fail or refuse to provide a lawful process by which the Plaintiffs can obtain a State-issued certificate or permit, the Defendants cannot require the Plaintiff to obtain a State-issued certificate or permit to exercise their constitutional right.

88.   The Defendants conduct of eliminating all lawful process for the Plaintiffs to obtain a State-issued certificate or permit, while continuing to require the Plaintiffs first obtain a State-issued certificate or permit to exercise their constitutional right, is a violation of the Plaintiffs' Fifth & Fourteenth Amendment right to due process of law.

89.   The Plaintiffs have been damaged and continue to be damaged by the Defendants' conduct.

90.   The Plaintiffs have no adequate remedy at law as no damages could compensate the Plaintiffs for the deprivation of their Constitutional rights.

91.   Without an order for temporary injunctive relief pending a hearing on the Plaintiffs' claims for permanent injunctive relief, the Plaintiffs will suffer ongoing irreparable harm.

## COUNT 3 – DEPRIVATION OF CIVIL RIGHTS VIOLATIONS OF THE EQUAL PROTECTION OF THE LAWS 42 U.S.C. § 1983

92.   Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

93.   Article IV, Section 2 of the United States Constitution states in relevant part ". . . nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws."

94.   The Fourteenth Amendment to the United States Constitution provides in relevant part: "No state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

95.    Connecticut law allows people who follow the legal process established by State statute, and who are found to be qualified under Connecticut law, to purchase and possess firearms, ammunition, and/or magazines.

96.    Connecticut law allows people who seek certain licenses, permits and certifications which require the State to obtain a copy of their fingerprints, to have their fingerprints taken by a law enforcement officer in the State.

97.    The State is allowing people seeking certain licenses, permits and certifications the opportunity to have their fingerprints taken by a law enforcement, but have denied and continue to deny the Plaintiffs the same opportunity, even though the Plaintiffs seek the opportunity to exercise a Constitutionally-guaranteed right and those being given that opportunity are not.

98.    The Defendants conduct of allowing people seeking certain licenses, permits and certifications the opportunity to have their fingerprints taken by a law enforcement, while denying and continue to deny the Plaintiffs the same opportunity, deprives the Plaintiffs' of the equal protection of laws.

99.    The Plaintiffs have been damaged and continue to be damaged by the Defendants' conduct.

100.    The Plaintiffs have no adequate remedy at law as no damages could compensate the Plaintiffs for the deprivation of their Constitutional rights.

101.    Without an order for temporary injunctive relief pending a hearing on the Plaintiffs' claims for permanent injunctive relief, the Plaintiffs will suffer ongoing irreparable harm.

## COUNT 4 – DEPRIVATION OF CIVIL RIGHTS
## VIOLATIONS OF THE PRIVILEGES & IMMUNITIES OF CITIZENSHIP
## 42 U.S.C. § 1983

102.    Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

103.    Article IV, Section 2 of the United States Constitution states in relevant part ". . . the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

104.    Section 1 of the Fourteenth Amendments to the United States Constitution states in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . ."

105.    Citizens of every state who follow the legal process established by their respective states and who are found to be qualified under their state's law to purchase and possess firearms, ammunition and/or magazines have the legal right to purchase and possess firearms, ammunition and/or magazines for lawful purposes.

106.    Such right to lawfully obtain and possess firearms, ammunition and/or magazines for lawful purposes pursuant to the law of the state of citizenship is one of the privileges and immunities of citizenship as a citizen of the United States.

107.    The Defendants' conduct, which prevents the Plaintiffs from obtaining and possessing firearms, ammunition and/or magazines under State statutes, deprives the Plaintiffs of the privileges and immunities of citizens.

108.    The Plaintiffs have been damaged and continue to be damaged by the Defendants'
        conduct.

109.    The Plaintiffs have no adequate remedy at law as no damages could compensate the
        Plaintiffs for the deprivation of their Constitutional rights.

110.    Without an order for temporary injunctive relief pending a hearing on the Plaintiffs'
        claims for permanent injunctive relief, the Plaintiffs will suffer ongoing irreparable
        harm.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully demand the following relief:

1.     A trial by jury on all issues so triable pursuant to Fed.R.Civ.P. 38;

2.     Compensatory damages as will be proven at trial;

3.     Punitive damages under 42 U.S.C. § 1983;

4.     Attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988;

5.     A declaratory judgment that Plaintiff CCDL's members, including Plaintiffs Jones,
       Skilton, Lowman, Coll, Brown, Gervais and others similarly situated who are not
       prohibited from acquiring and possessing firearms under federal and state laws, have
       a fundamental individual right to keep and bear arms, including being able to acquire
       through purchase or otherwise, firearms ammunition, and/or magazines, guaranteed
       under the Second and Fourteenth Amendments to the United States Constitution;

6.     A declaratory judgment that enforcement of CGS §§ 29-38m(e), 29-37a(j), and/or 29-
       33(i) without the State providing a process for Plaintiff CCDL's members, including
       Plaintiffs Jones, Skilton, Lowman, Coll, Brown, Gervais and others similarly situated

24

who are not prohibited from acquiring and possessing firearms under federal and

state laws to obtain and possess firearms, ammunition, and/or magazines violates

their rights to keep and bear arms guaranteed under the Second and Fourteenth

Amendments to the United States Constitution, violates their right to due process of

law under the Fifth and Fourteenth Amendments to the United States Constitution,

violates their right to equal protection of the law guaranteed by Article IV, Section 2

and the Fourteenth Amendment to the United States Constitution, and deprives

them of the privileges and immunities of citizenship guaranteed by Article IV, Section

2 and the Fourteenth Amendment to the United States Constitution;

7.    A declaratory judgment that the portion of Defendant Lamont's Executive Order 7E

suspending the taking of fingerprints for the purposes of performing a criminal

background check required to obtain a firearms certificate and permit violates the

Plaintiffs' rights to keep and bear arms guaranteed under the Second and Fourteenth

Amendments to the United States Constitution, violates the Plaintiffs' right to due

process of law under the Fifth and Fourteenth Amendments to the United States

Constitution, violates the Plaintiffs' right to equal protection of the law guaranteed by

Article IV, Section 2 and the Fourteenth Amendment to the United States

Constitution, and deprives the Plaintiffs of the privileges and immunities of

citizenship guaranteed by Article IV, Section 2 and the Fourteenth Amendment to

the United States Constitution;

8.    A declaratory judgment that Defendant Melanson's suspension of taking fingerprints

of applicants for firearms certificates and permits violates Plaintiff Jones' right to

keep and bear arms guaranteed under the Second and Fourteenth Amendments to the United States Constitution, violates her right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, violates her right to equal protection of the law guaranteed by Article IV, Section 2 and the Fourteenth Amendment to the United States Constitution, and deprives her of the privileges and immunities of citizenship guaranteed by Article IV, Section 2 and the Fourteenth Amendment to the United States Constitution;

9. A declaratory judgment that Defendant Melanson's suspension of taking fingerprints of applicants for firearms certificates and permits violates Plaintiff Skilton's right to keep and bear arms guaranteed under the Second and Fourteenth Amendments to the United States Constitution, violates his right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, violates his right to equal protection of the law guaranteed by Article IV, Section 2 and the Fourteenth Amendment to the United States Constitution, and deprives him of the privileges and immunities of citizenship guaranteed by Article IV, Section 2 and the Fourteenth Amendment to the United States Constitution;

10. A declaratory judgment that Defendant Cota's suspension of taking fingerprints of applicants for firearms certificates and permits violates Plaintiff Lowman's right to keep and bear arms guaranteed under the Second and Fourteenth Amendments to the United States Constitution, violates his right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, violates the his right to equal protection of the law guaranteed by Article IV, Section 2 and the Fourteenth

Amendment to the United States Constitution, and deprives him of the privileges and immunities of citizenship guaranteed by Article IV, Section 2 and the Fourteenth Amendment to the United States Constitution;

11.     A declaratory judgment that Defendant Gould's suspension of taking fingerprints of applicants for firearms certificates and permits violates Plaintiff Brown's right to keep and bear arms guaranteed under the Second and Fourteenth Amendments to the United States Constitution, violates the her right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, violates her right to equal protection of the law guaranteed by Article IV, Section 2 and the Fourteenth Amendment to the United States Constitution, and deprives her of the privileges and immunities of citizenship guaranteed by Article IV, Section 2 and the Fourteenth Amendment to the United States Constitution;

12.     A declaratory judgment that Defendant Kenny's suspension of taking fingerprints of applicants for firearms certificates and permits violates Plaintiff Coll's right to keep and bear arms guaranteed under the Second and Fourteenth Amendments to the United States Constitution, violates the his right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, violates his right to equal protection of the law guaranteed by Article IV, Section 2 and the Fourteenth Amendment to the United States Constitution, and deprives him of the privileges and immunities of citizenship guaranteed by Article IV, Section 2 and the Fourteenth Amendment to the United States Constitution;

13.    A declaratory judgment that Defendant Rovella's failure to process the pistol permit application of Plaintiff Gervais violates his right to keep and bear arms guaranteed under the Second and Fourteenth Amendments to the United States Constitution, violates his right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, violates Plaintiff Gervais' right to equal protection of the law guaranteed by Article IV, Section 2 and the Fourteenth Amendment to the United States Constitution, and deprives him of the privileges and immunities of citizenship guaranteed by Article IV, Section 2 and the Fourteenth Amendment to the United States Constitution;

14.    A preliminary and permanent injunction prohibiting Defendants Rovella, Melanson, Cota, Gould and Kenny and their respective employees, officers, agents, representatives, and those acting in concert or participation with them, from refusing to accept and process firearms certificate or permit applications and from refusing to issue firearms certificates and permits to eligible applicants;

15.    In the alternative, a preliminary and permanent injunction prohibiting the Defendants and each of their respective employees, officers, agents, representatives, and those acting in concert or participation with any of them, from enforcing CGS §§ 29-38m(e), 29-37a(j), and/or 29-33(i) against CCDL's members, including Plaintiffs Jones, Skilton, Lowman, Coll, Brown, Gervais and others similarly situated unless and until the State provides the Plaintiffs a process by which they can lawfully obtain firearms, ammunition and/or magazines;

16.    A writ of mandamus to compel the Defendants to either 1) provide for a process under which applicants may lawfully obtain firearms certificates and permits or 2) allow persons who are otherwise not prohibited from possessing firearms under federal and state law to lawfully acquire and possess firearms, ammunition, and/or magazines without a firearms certificate or permit;

17.    Any and all other and further legal and equitable relief, including injunctive relief, against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

Dated: MAY 9, 2020        Respectfully submitted,

                              */s/ Craig C. Fishbein*
                              Craig C. Fishbein, Esq.
                              (ct25142)
                              FISHBEIN LAW FIRM, LLC
                              100 South Main Street
                              P.O. Box 363
                              Wallingford, Connecticut 06492
                              Telephone: 203.265.2895
                              Facsimile: 203.294.1396
                              E-mail: ccf@fishbeinlaw.com


                              */s/ Doug Dubitsky*
                              Doug Dubitsky, Esq.
                              (ct21558)
                              LAW OFFICES OF DOUG DUBITSKY
                              P.O. Box 70
                              North Windham, CT 06256
                              Telephone: 860.933.9495
                              Facsimile: 866.477.1120
                              Email: doug@lawyer.com

                              Attorneys for the Plaintiffs