**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONNECTICUT CITIZENS DEFENSE LEAGUE, INC., AMY JONES, TODD SKILTON, JOHN LOWMAN, JOSEPH COLL, TANYSHA BROWN AND DANIEL GERVAIS | CIV. NO. 3:20-cv-00646 (JAM) |
| Plaintiffs, | **REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER, OR IN THE ALTERNATIVE, ISSUANCE OF A PRELIMINARY INJUNCTION** |
| v. | |
| NED LAMONT,  JAMES ROVELLA,  PAUL MELANSON, ANDREW COTA, BRIAN GOULD AND JAMES KENNY | |
| Defendants | MAY 26, 2020 |

## I.  <u>INTRODUCTION</u>

By their arguments, Defendants Lamont and Rovella (hereafter, "Defendants")[1] show that they consider the right protected by the Second Amendment to be a "second class right," exactly what the U. S. Supreme Court has expressly prohibited them from doing. *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010). Analogies to 1950s East Germany would be widely invoked if the state required a local and state-issued permit to write for a newspaper and then halted the process for obtaining all such permits just when the need for news of the government's reaction to a national crisis reached its zenith.

---

[1] Plaintiffs and Defendants Kenny, Melanson, Gould, and Cota, have reached agreement that avoids the need for preliminary relief against these defendants. Plaintiffs therefore, only responds to the opposition brief of Lamont/Rovella.

Even more frightening, however, is the Defendants' apparent view that their efforts to combat a public health emergency puts all constitutional rights at their unchallengeable discretion. If the Defendants are enabled to proclaim that anything the government does in the name of public health is within their authority, our "inalienable" constitutionally guaranteed rights become but tentative state-bestowed privileges revocable at the whim of any official who unilaterally declares it in the public interest. To address a public health emergency, the Defendants' arguments would sanction issuing warrants without probable cause, taking private property for public use without just compensation, and quartering soldiers during peacetime in houses without the owners' consent. Our constitutional principles cannot countenance such benevolent disregard.

The United States Constitution establishes unyieldable guardrails beyond which the government may not and shall not venture, even with the best of motives. Our constitutional system gives the government immense powers and authorities to act to protect the public in the face of a public health crisis. Cutting off the already restrictive process established by the state for citizens to legally exercise their Second Amendment rights is not among them.

## II.   <u>ARGUMENT</u>

### A.   **THIS COURT HAS JURISDICTION**

The Eleventh Amendment is no bar to the Court granting the Plaintiffs' prayer for preliminary relief. Defendants argue that this Court lacks jurisdiction to award damages against them, award retrospective equitable or declaratory relief and to enjoin them to ensure compliance with state law. Def. Br. at 8. However, Plaintiffs' prayer for preliminary relief asks for none of those measures of relief.  The Plaintiffs ask the Court only for prospective preliminary relief, to wit: a preliminary injunction prohibiting the Defendants "from refusing to

accept and process firearms certificate or permit applications and from refusing to issue firearms certificates and permits to eligible applicants" and in the alternative, "from enforcing CGS §§ 29-38m(e), 29-37a(j), and/or 29-33(i) against [Plaintiffs] unless and until the State provides the Plaintiffs a process by which they can lawfully obtain firearms, ammunition and/or magazines." Compl. at 28. The Defendants are free to move to strike those specific prayers for permanent relief they may feel are unwarranted. Issues of permanent relief not requested in Plaintiffs' motion for preliminary relief are not jurisdictional, and are properly reserved for later stages of this action when they can be fully briefed.

## B.    THE PLAINTIFFS HAVE STANDING

### 1.    Injury in Fact

Defendants argue that since the Plaintiffs are not guaranteed to qualify for a pistol permit, that they have no standing to assert a liberty interest in applying for one. Def. Br. at 10. This is a red herring. The Plaintiffs never claimed injury by the improper denial of a discretionary permit.[2] Instead, the Plaintiffs' were injured when the government conditioned the exercise of their constitutional rights on obtaining a permit for which the government would not even allow them to apply. Under the Defendants' argument, the process to apply for a permit required to exercise a constitutional right, can be eliminated because the applicant might not be found qualified if the applicant were allowed to apply. The fact that some applicants may not meet the criteria for approval does not give the Defendants license to prevent all people from

---

[2] Defendants argue that Plaintiffs should seek redress before the Board of Firearms Permit Examiners. Lamont/Rovella Br. at 5, 7, 13 and 22. However, the Board of Firearms Permit Examiners has no authority to review the governor's executive orders or a local Police Department's administrative procedures promulgated in reliance on same. C.G.S. § 29-32b. Under Connecticut law, a person is not required to exhaust administrative remedies which would be futile. *Frank v. Department of Parks and Recreation of Town of Greenwich*, 78 Conn.App. 601, 609, 828 A.2d 692 (2003) (exhaustion futile when arbitrator lacked authority to award remedy sought).

applying. That qualifying for the permit is not guaranteed is no defense to eliminating the only process provided for the Plaintiffs to apply. The Plaintiffs' injuries are not speculative, they have already been incurred.[3]

### 2.    Plaintiffs' Injuries are Traceable to the Defendants

Defendants seek to throw the local Police Chiefs under the bus by arguing that they, not the Defendants, caused the Plaintiffs' constitutional injuries by suspending fingerprinting. Def. Br. at 12 (referring to local Police Departments as "a third party."). The local Police Chiefs, on the other hand, correctly point out that their actions were taken in response to Defendant Lamont's Executive Order empowering them to suspend the only process under which a person without a firearms or ammunition permit would apply to obtain one. The Defendants made independent decisions and took affirmative actions which resulted in the denial of the Plaintiffs' rights to submit their applications for due consideration, and to have those applications timely and objectively processed. The Plaintiff's injuries are traceable to the Defendants.

### 3.    Plaintiffs' Injuries Can and Should Be Redressed by the Court

By issuing the preliminary relief the Plaintiffs seek, this Court would, at least temporarily, redress the Plaintiff's injuries. The Defendants argue again that Plaintiffs are not guaranteed to qualify for a permit if this Court ordered the Defendants to accept their applications. Def. Br. at 12. But the Plaintiffs seek no such guarantees. They seek to invoke the bureaucracy to determine their eligibility under state law to exercise their fundamental constitutional rights. The Court can and should afford the Plaintiffs such relief.

---

[3] Defendants argue that Plaintiff Gervais is not injured because with his local permit, he is already allowed to carry a firearm in his home town. Def. Br. at 11. However, without a state-issued permit, he is legally prohibited from purchasing ammunition, C.G.S. § 29-38m(c), making even that limited right to carry a firearm within the confines of the Town of Griswold entirely meaningless.

C.      **THE PLAINTIFFS SATISFY CRITERIA FOR TRO AND INJUNCTION**

1.      **IRREPARABLE HARM**

Defendants argue that the Plaintiffs have not shown they lack an adequate remedy at law and thus, cannot show irreparable injury. Def. Br. at 21-23.[4] However, no money damages paid months from now can adequately compensate the Plaintiffs for having their constitutional rights violated today, with the risk continuing for an indeterminate time. There is no way to tell how long Defendant Lamont's declared state of emergency will endure. So long as it is in effect, the Plaintiffs and those like them who do not already possess a certificate or permit to obtain and possess firearms, ammunition and magazines are at risk that their right to apply for such certificate or permit will once again be eliminated. During that entire time – which has already lasted over two months and could realistically stretch out for many more – the Plaintiffs and those like them may be unable to even initiate the heavily regulated process of applying to the government for permission to exercise their constitutional rights. Under any standard suggested by the Defendants, this constitutes irreparable harm.

2.      **PLAINTIFFS WILL SUCCEED ON THE MERITS**

a)      **Defendants' Reliance on 1905 *Jacobson* Case is Misplaced**

The Defendants rely heavily on the 115 year old *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) to justify refusing to fingerprint people who seek a permit to legally obtain and possess firearms and ammunition, despite having a safe process in place to fingerprint people arrested

---

[4] Defendants cite *Lee v. Trump*, 2020 WL 1330673, at *1 (S.D.N.Y. Mar. 23, 2020) to support the argument that the Plaintiffs have not met their burden. Lamont/Rovella Br. at 22. But in *Lee*, the TRO was denied because the movant failed to plead irreparable harm. Here, each Count of the First Amended Complaint pleads irreparable harm. See generally, First Amended Complaint.

for illegally obtaining and possessing firearms and ammunition without a permit. Def Br. at 14-17.

Admittedly, *Jacobson* has been cited to defend constitutional abuses in the past. However, even *Jacobson* itself makes crystal clear that courts have a duty to enjoin the state's police power when it reaches "beyond the necessity of the case, and, under the guise of exerting a police power… violate[s] rights secured by the Constitution," "has no real or substantial relation to… protect[ing] the public health, the public morals, or the public safety," or "is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Jacobson*, 197 U.S. at 28, 30.

Here, shutting down the fingerprinting for firearms permit purposes goes well "beyond the necessity of the case" when fingerprinting continues unabated for other purposes.[5] Preventing the Plaintiffs from applying for a permit necessary to legally protect themselves "has no real or substantial relation to… protect[ing] the public health, the public morals, or the public safety. . . " when the Defendants continue to employ the very same systems and procedure to fingerprint the very criminals against whom the Plaintiffs wish to protect themselves.

Importantly, *Jacobson* involved the challenge of a legislatively enacted state law. Here, in contrast, the Plaintiffs are challenging the Executive Order of one man which explicitly empowers state and local law enforcement to openly ignore the state statutes duly enacted by the people's legislature specifically to protect the very constitutional rights now being violated by the Defendants. For that prospect, *Jacobson* offers the Defendants no comfort.

---

[5] Defendants aver that "DESPP has temporarily discontinued all fingerprints for any purpose." Def. Br. at 20 (citing Rovella Affidavit, para 21). However, Rovella's affidavit states only that he ordered a suspension of fingerprinting "pursuant to Section 29-17c" for firearms permitting purposes. Rovella Affidavit, para 21. Counsel for Defendants has acknowledged to Plaintiff's counsel that the averment in his brief is in error. Fingerprinting by DESPP has continued for other purposes.

Furthermore, *Jacobson* is no shining light of modern constitutional jurisprudence, having been decided long before the modern constitutional frameworks for analyzing many fundamental constitutional rights were established, including the First and Second Amendments. Consequently, any reliance upon *Jacobson* must overcome the significant "challenge of reconciling century-old precedent with… more recent constitutional jurisprudence." *Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913, 926 (6th Cir. 2020). [6]  In *Slatery*, the court affirmed with slight modification the preliminary injunction against the Tennessee Governor's Executive Order issued during COVID-19 pandemic requiring health care providers postpone abortions for three weeks. As requested here, the *Slatery* court refused to countenance "the notion that COVID-19 has somehow demoted [the Plaintiffs' constitutional rights] to second-class rights, enforceable against only the most extreme and outlandish violations. Such a notion is incompatible not only with *Jacobson*, but also with American constitutional law writ large." *Id.* at 927.

Our federal courts cannot fail to fulfill their constitutional roles by rubber-stamping every state government action taken in the name of preserving public health. Where, as here, the government – by executive order, no less – blocks all access to the only state-approved path to legally exercising a fundamental constitutional right for an indefinite period of time, the federal courts must step in.

### 3.      BALANCING OF EQUITIES FAVORS PLAINTIFFS

As discussed in the Plaintiff's opening brief, the Court only balances equities (aka, "hardships") when the "likelihood of success on the merits" standard is inapplicable. See Pl. Br.

---

[6] Under modern constitutional jurisprudence developed since 1905, governmental actions ostensibly relying on *Jacobson* to negate fundamental constitutional rights would have little chance of surviving any reasonable level of modern scrutiny. See e.g., *Buck v. Bell*, 274 U.S. 200, 207 (1927) (relying on *Jacobson* to uphold the Virginia law mandating the forced sterilization of the "feeble minded.").

at 11 (citing *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir.2014). Should the Court employ that test, the balance weighs heavily in the Plaintiffs' favor. *Id.*

However, the Defendants' analysis of this factor is instructive of their dismissive view of the Plaintiffs' Second Amendment rights. See Def. Br. at 23-24. The Defendants view this simply as a case of some people seeking to "immediately proceed through the permit process, during a pandemic." *Id.* at 24. There is no sense or acknowledgement that the Plaintiffs even have any firearm-related constitutional rights or that imposing a complete ban for a potentially unlimited period of time on all Connecticut residents applying for a permit to obtain and possess firearms, ammunition, and magazines is anything but a minor inconvenience to a disgruntled few. Such inconvenience, on top of Connecticut's existing severe restrictions, would never be tolerated by the Defendants, the Attorney General or the courts regarding any other fundamental constitutional right (imagine a three-week delay in obtaining an abortion in Connecticut as was enjoined by the federal courts in Tennessee, *Adams & Boyle, P.C. v. Slatery*, 956 F.3d at 930). Yet, in direct contravention of the Supreme Court's admonishment not to view the Second Amendment as a "second-class right," that is exactly how the Defendants are treating it. This Court should not follow suit.

### III.   CONCLUSION

For these reasons, and those discussed in the Plaintiffs' opening brief, the Court should grant the Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction and temporarily relieve the Plaintiffs of the unconstitutional burden the Defendants have so cavalierly imposed on them, pending a full hearing on the merits of the Plaintiffs' claims.

Dated: MAY 26, 2020     Respectfully submitted,

/s/ Craig C. Fishbein
Craig C. Fishbein, Esq.
(ct25142)
FISHBEIN LAW FIRM, LLC
100 South Main Street
P.O. Box 363
Wallingford, Connecticut 06492
Telephone: 203.265.2895
Facsimile: 203.294.1396
E-mail: ccf@fishbeinlaw.com

/s/ Doug Dubitsky
Doug Dubitsky, Esq.
(ct21558)
LAW OFFICES OF DOUG DUBITSKY
P.O. Box 70
North Windham, CT 06256
Telephone: 860.808-8601
Facsimile: 866.477.1120
Email: doug@lawyer.com

Attorneys for the Plaintiffs

## **CERTIFICATION**

I hereby certify that on May 26, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Craig C. Fishbein
Craig C. Fishbein, Esq.
(ct25142)
FISHBEIN LAW FIRM, LLC
100 South Main Street
P.O. Box 363
Wallingford, Connecticut 06492
Telephone: 203.265.2895
Facsimile: 203.294.1396
E-mail: ccf@fishbeinlaw.com